**SO ORDERED: December 19, 2012.**



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DARRELL RAY DAUGHERTY and | ) | Case No. 09-90940-BHL-13 |
| TRUDY LYNN DAUGHERTY, | ) | |
| | ) | |
| Debtors. | ) | |

### ORDER DENYING TRUSTEE'S AMENDED MOTION TO COMPEL

This matter is before the Court on the amended motion of the chapter 13 trustee ("Trustee") filed September 21, 2012 [Doc. 66], by which he seeks an order compelling Americredit Financial Services Inc. ("Americredit") to release its lien on the Debtors' 2003 Nissan Xterra (the "Vehicle") and to deliver to him the certificate of title thereto. Americredit has objected [Doc. 64] to the Trustee's motion. Both parties have submitted papers in support of their positions [*see* Docs. 59, 63, 65, and 68]. The Court heard arguments from the parties at a hearing on September 25, 2012, wherein additional authority was cited. Having considered the foregoing, for reasons set forth below, the Court now DENIES the Trustee's motion.

**Background**

The relevant facts are undisputed.

In 2006, the Debtors filed for relief in this Court under chapter 7 (Case. No. 06-90199), and received a discharge on August 24, 2006. On September 7, 2006, the Debtors purchased the Vehicle and financed it with a loan from Americredit. On March 24, 2009, the Debtors filed the instant case under chapter 13. Since less than four years had elapsed since they received their chapter 7 discharge, the Debtors were not eligible for a chapter 13 discharge. *See* § 1328(f)(1).

According to the terms of their chapter 13 plan [Doc. 2] (the "Plan"), which was confirmed [Doc. 22] without an objection being raised by Americredit, the Debtors' obligation to Americredit was bifurcated into a secured claim for $8,125, which was to bear interest at 3.25% and be paid in full during the term of the plan, and an unsecured claim for $5,856.47.[1] The Plan, which was filed using the official form in effect at the time, contained a standard term that provided as follows:

> LIEN RETENTION. With respect to each allowed secured claim provided for by the plan, the holder of such claim shall retain its lien securing such claim until the earlier of a) the payment of the underlying debt determined under non-bankruptcy law or b) a discharge order being entered under 11 U.S.C. 1328.

Plan at ¶ 12.

For nearly three years, the Debtors made timely payments under the Plan. In the process, they paid down Americredit's secured claim considerably. In October 2011, Mr. Daugherty died. Though Mrs. Daugherty tried to make her Plan payments for some time, she soon fell behind, and in March 2012, the Trustee moved to dismiss this case based on the delinquency.

The same day the Trustee moved to dismiss this case, the Vehicle was totaled in an accident. Thereafter, Americredit sent the insurer of the Vehicle a guarantee of title and a claim

---

[1] Though the Debtor's obligation to Americredit was secured by a purchase-money security interest in the Vehicle, it was subject to bifurcation pursuant to § 506(a) because it was incurred more than 910 days before the commencement of the instant case. *See* § 1325(a)(5).

2

for the full amount of the insurance proceeds. On April 5, the insurer made a check for $8,737.00 payable to Americredit.[2] Inexplicably, the insurance carrier mailed the check to the Trustee rather than to Americredit. The Trustee (or more accurately the agent who receives and sends his checks) deposited the check without endorsing it. At the end of April, with this case and the Trustee's motion to dismiss still pending, the Trustee used a portion of the insurance proceeds to pay the balance owed on Americredit's secured claim, which amounted to $1,182.53, and delivered the balance of the insurance proceeds, amounting to $7,554.47, to the Debtor so that she could buy another vehicle. This case was dismissed without objection on June 12, 2012.

Meanwhile, the insurer demanded the title to the Vehicle from the Trustee. Americredit, believing itself to be entitled to the full proceeds from the Trustee, refused the Trustee's demands for it. The Trustee then had this case reopened and filed the motion at bar.

## Discussion

The Trustee advances two arguments in support of his motion. First, the Trustee argues that Americredit's interest in the insurance proceeds is limited by Indiana law to that which it has received. Second, the Trustee argues that Americredit's security interest in the Vehicle was limited to the amount of its allowed secured claim when the Plan was confirmed. Each argument is considered in turn.

### *Treatment of Proceeds of Collateral under the Indiana Commercial Code*

To secure the loan from Americredit, the Debtors granted Americredit a security interest in the Vehicle and its proceeds. With respect to such secured transactions, Indiana's Uniform Commercial Code provides a definition of "proceeds" limited, in pertinent part, to "the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral." Ind. Code § 26-1-9.1-102(64)(E).

---

[2] The check was actually made payable to "GM Financial," a trade name of Americredit.

According to the Trustee, since the confirmed Plan's bifurcation of the Debtor's obligation to Americredit into a secured claim and an unsecured claim constituted a determination of the value of the Vehicle at the time the case was commenced, the Plan works in conjunction with Indiana law to limit Americredit's interest in the insurance money to the balance of its secured claim.  In opposition, Americredit urges a reading of the Indiana statute that determines the scope of proceeds by reference to the value of collateral at the time when the impairment which results in the insurance benefit is sustained.  Neither party cites an Indiana case on point, nor has the Court identified one in its research.

In support of his position, the Trustee relies primarily on *Helms v. Certified Packaging Corp.*, 551 F.3d 675 (7th Cir. 2008), which is readily distinguishable but instructive.  *Certified Packaging* involved a contest between a judgment creditor and a secured lender over tort awards and claims resulting from the destruction of the lender's collateral.  Interpreting the identical Illinois counterpart to Ind. Code § 26-1-9.1-102(64)(E),[3] Judge Posner observed that the statute obviously encompassed reimbursement for physical damage to collateral; indeed, the parties were not even contesting that point.  *Certified Packaging*, 551 F.3d at 678.  Rather, claims relating to business losses resulting from the destruction of collateral were in dispute, and the court held that they were not proceeds and so were outside the scope of the lender's security interest.  *Id.* at 678-79.

As a matter of state law, Americredit's position is the better one.  Confirmation of the Plan determined the value of the Vehicle when the case commenced, but that is not the inquiry called for by the plain language of the Indiana statute.  When the Vehicle was damaged, Americredit had a lien on it that exceeded the Vehicle's value.  Pursuant to Americredit's

---

[3] *Certified Packaging* dealt with UCC § 9-102(64)(D) as well as the subsection (E) under discussion in this case.  The former subsection deals with claims based on interference with rights in collateral or impairment thereof.  For the purposes of this inquiry, related to the scope of proceeds, the analyses of the two subsections are the same.

4

contract with the Debtors, that lien extended to the insurance proceeds. The insurer paid a benefit equal to its opinion of the value of the Vehicle at that time; the Trustee has not disputed the equivalence between the insurance proceeds and the value of the Vehicle when it was damaged. Accordingly, the entire amount of the insurance proceeds was proceeds of the Vehicle under Ind. Code § 26-1-9.1-102(64)(E), and Americredit's lien encumbered the funds.

### *The Effect of Confirmation of the Debtors' Plan*

Apart from his argument based on the UCC, the Trustee maintains that confirmation of the Plan, with its bifurcation of the Debtors' obligation to Americredit into secured and unsecured claims, precludes Americredit from seeking to recover from the collateral more than its secured claim. Americredit's demand for the balance of the insurance proceeds, according to the Trustee, constitutes an attempt to obtain two satisfactions of its secured claim.

This case would have presented a more difficult question of the Debtors had been eligible for a chapter 13 discharge. Without endorsing any particular approach, the Court notes that at least one other court has struggled with this scenario in that context. *See In re Norred*, 2011 WL 4433598 (Bankr. D. Or. 2011) (ordering trustee to hold insurance proceeds in excess of secured claim until discharge or dismissal). Too, this case would be more difficult if the confirmed Plan had proposed that Americredit reduce the amount of its lien or release it upon some contingency like the destruction of the Vehicle. Such a scenario would have required the Court to consider the law of preclusion cited by the Trustee. *See United Student Aid Funds v. Espinosa*, 130 S.Ct. 1367 (2010) (holding that confirmed plan providing for discharge of student loan precludes creditor from contesting discharge though statute and rules require debtor to file an adversary proceeding and show undue hardship; anticipating, at n. 10, distinguishable cases where debts cannot be discharged under any circumstances notwithstanding terms of confirmed plan); *see also In re Harvey*, 213 F.3d 318 (7th Cir. 2000).

5

However, the Court need not weigh in on these more difficult questions here, because this dispute is resolved by the terms of the Plan. As quoted above, the Plan expressly provides that holders of allowed secured claims, such as Americredit, retain their liens until the earlier of discharge or the payment of the debt in full under nonbankruptcy law.[4] Since this case was never eligible for discharge, the Plan provision can only mean that Americredit would retain its lien until the entire contract debt was paid. The bifurcation of Americredit's claim is not expressly at odds with this provision, and, where it can be avoided, the Court will not interpret a plan in a way that results in the nullification of any of its terms. With that in mind, the Court reads the provisions of the Plan concerning the treatment of Americredit's claims to address only the amounts Americredit would be paid by the Trustee and considers the paragraph providing for the retention of Americredit's lien to control Americredit's other rights.

### Conclusion

Americredit's lien extended to the insurance proceeds at the time they came into the Trustee's possession. Accordingly, Americredit cannot be compelled to deliver title to the Vehicle to the Trustee, and the Trustee's motion is DENIED.

IT IS SO ORDERED.

###

---

[4] This provision tracks the statutory language of § 1325(a)(5)(B)(i)(I), which was added to the Code in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8. BAPCPA arguably changed preexisting law: § 1325(a)(5)(B)(i) had been silent as to whether a secured creditor could be compelled to release its lien prior to discharge if its secured claim had been paid in full. The BAPCPA amendment clarifies that a creditor may not be compelled to accept such treatment.